UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

In re

GALINA ANDREYEV,

         Debtor,

FIRST NATIONAL BANK OF OMAHA,

         Plaintiff/Appellee,

   v.

GALINA ANDREYEV,

         Defendant/Appellant.

NO. CIV. S 05-0705 MCE

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    Defendant Galina Andreyev ("Andreyev") appeals the Bankruptcy Court's judgment in favor of Plaintiff First National Bank of Omaha. Pursuant to its Memorandum Decision filed February 18, 2005, the Bankruptcy court entered judgment that Andreyev's credit card debt to the First National Bank of Omaha,

in the amount of $4,656.61, was non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523 (a)(2)(C).  For the reasons set forth below, the bankruptcy court's decision is affirmed.

## BACKGROUND

Andreyev filed a petition for bankruptcy under 11 U.S.C. Chapter 7 on September 18, 2002.  Among the debts Andreyev sought to discharge through bankruptcy was credit card debt incurred through use of a credit card issued by the First National Bank of Omaha.  As of July 25, 2002, that credit card account was in good standing and had a balance of $4,699.48. Between July 25, 2002 and September 9, 2002, Andreyev made purchases against the credit card, and took a $1,200.00 cash advance, for total additional charges of $4,463.70.  Those charges, which were all incurred less than two months before Andreyev filed for bankruptcy, brought Andreyev's credit card over its $9,000.00 limit.

On December 19, 2002, the First National Bank of Omaha filed a complaint against Andreyev seeking an exception from discharge for the debt incurred by Andreyev within sixty days prior to her bankruptcy.  Trial was held before the bankruptcy court on February 17, 2005.  A Memorandum Decision, issued the following day, set forth the court's findings of fact and conclusions of law following that trial.

While Plaintiff First National Bank of Omaha asserted in its complaint that Andreyev's charges just prior to bankruptcy were non-dischargeable both by virtue of the provisions of 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(2)(C), in fact the court's decision

2

was premised on § 523(a)(2)(A), which precludes discharge of any debt obtained by "false pretenses, a false representation, or actual fraud."  The court found that Andreyev's promise to repay the charges in question, which it found to be implied each time a credit card is used, "was either false or so reckless as to constitute willful misrepresentation". (Memorandum Decision, attached as Exhibit "B" to Appellant's Designation of Record, 4:15-17).

The bankruptcy court looked to a number of factors gleaned from the both the written record and the testimony adduced at trial in making that factual determination.  First, the court noted that Plaintiff's use of her credit card just before bankruptcy more than doubled, even though neither Andreyev or her husband was employed.  This "virtual spending spree", as described by the court, put Andreyev over her credit card limit and was made under "bleak" financial conditions.  Andreyev herself was disabled, had not worked for many years, and received an income consisting of disability assistance payments totaling some $9,000.00 per year.  Her husband's unemployment benefits expired in August 2002, concurrently with Andreyev's increased use of the credit card.  In addition, at the time Andreyev's bankruptcy petition was filed, she and her husband owed $48,000.00 in unsecured obligations, including nearly $16,000.00 in credit card debt.

Based on these circumstances, the Court inferred that Andreyev "never intended to repay the charges incurred in the 60-day period prior to her bankruptcy filing", making her implied promise to pay this obligation false and with the intent to

3

deceive the First National Bank of Omaha.  (Memorandum Decision, 6:20-24).  The bankruptcy court consequently found the credit card debt incurred by Andreyev between July and September of 2002 was excepted from discharge under 11 U.S.C. § 523(a)(2)(A). While the court noted in its decision that some of the charges made were also non-dischargeable as constituting the purchase of "luxury goods and services" within 60 days prior to bankruptcy in contravention of § 523(a)(2)(C), it noted that it did not need to specifically address that question since it determined that all of the charges in question were non-dischargeable under § 523(a)(2)(A).

Andreyev now appeals the judgment rendered against her pursuant to the bankruptcy court's Memorandum Decision.

**STANDARD**

An appellant may petition the district court for review of a bankruptcy court's decision. Fed. R. Bankr. P. 8013.  The applicable standard of review is identical to that employed by circuit courts of appeal in reviewing district court decisions. *See* Heritage Ford v. Baroff (In re Baroff), 105 F.3d 439, 441 (9th Cir. 1997).  Legal conclusions are renewed on a de novo basis, and factual determinations are assessed pursuant to a "clearly erroneous" standard. Murray v. Bammer (In re Bammer), 131 F.3d 788, 792 (9th Cir. 1997) (en banc).

Findings of fact are "clearly erroneous" only if the reviewing fact is "left with the definite and firm conviction that a mistake has been committed." In re Marquam Inv. Corp.,

942 F.2d 1462, 1466 (9th Cir. 1991) (quoting <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948)).  The appellant has the burden of proof in convincing the reviewing court that such error has been committed, and the reviewing court should not reverse simply because another decision could have been reached.  <u>In re Windsor Indus., Inc.</u>, 459 F. Supp. 270, 275 (N.D. Tex. 1978).

For bankruptcy discharge purposes, a debtor's intent to defraud is a factual determination reviewed for clear error. <u>Robertson v. Dennis (In re Dennis)</u>, 330 F.3d 696, 701 (5th Cir. 2003).

## ANALYSIS

It is difficult to divine from Appellant's Brief (which Andreyev has submitted *in pro se*) the precise grounds upon which she is appealing the bankruptcy court's decision in this matter. Most of Andreyev's argument is directed towards disputing any contention that the credit card charges at issue were for "luxury goods and services" so as to fall within the purview of § 523(a)(2)(C).[1]  In her nine page brief, Andreyev refers on some fifteen occasions to either "luxury" goods or the converse, items she deems to be "necessities".

To the extent Andreyev's appeal is premised on the applicability of the exemption for luxury goods, this bankruptcy

---

[1] The Court recognizes, however, that whether charges were incurred for luxury goods and services is also a factor to be considered in determining fraudulent intent for purposes of § 523(a)(2)(A), as will be discussed, *infra*.

5

appeal can be summarily rejected.  As stated above, the bankruptcy court's Memorandum Decision makes it clear that while § 523(a)(2)(C) does apply to some of the credit card charges at issue, the decision rests not on that subpart of the statute but instead on § 523(a)(2)(A), which operates to make the entire amount of the credit charges incurred since July of 2002 non-dischargeable.  (See Memorandum Decision, 3:19-25).  Consequently, the validity of the decision necessarily hinges on whether application of § 523(a)(2)(A), and the conclusion that Andreyev's conduct was either false or constituted willful misrepresentation, was proper.

   Inasmuch as Appellant's Brief also refers, at least obliquely, to a determination of fraud by the bankruptcy court, this Court will deem her appeal to also encompass § 523(a)(2)(A), although this is by no means clear from Andreyev's papers.  That section provides in pertinent part as follows:

> (A) A discharge under § 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt-
> ...
>    (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by-
>       (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insiders's financial condition;...

11 U.S.C. § 523(a)(2)(A).

   In order to prevail under § 523(a)(2)(A), a party contesting

the scope of a proposed bankruptcy discharge must prove that the debtor knowingly made false representations with the intention and purpose of deceiving the creditor, that the creditor relied on such representations, and that it sustained loss and damage as a result thereof. Britton v. Price (In re Britton), 950 F.2d 602, 604 (9th Cir. 1991).

Turning first to whether a false representation was knowingly made, the law is clear that every time a credit card is used, the card holder makes a representation that he intends to repay the debt. When a card is used without an intention to repay, a fraudulent representation has been made to the card's issuer. Anastas v. American Savings Bank (In re Anastas), 94 F.3d 1280, 1285 (9th Cir. 1996); American Express v. Hashemi (In re Hashemi), 104 F.3d 1122, 1126 (9th Cir. 1997). Because it is difficult to directly establish fraudulent intent in credit card cases like this one, circumstantial evidence inferring fraud from the "totality of the circumstances" may be enlisted. Household Credit Services, Inc. v. Ettell (In re Ettell), 188 F.3d 1141, 1145 (9th Cir. 1999). In determining the totality of the circumstances, the Ninth Circuit Bankruptcy Appeal Panel, in Citibank South Dakota v. Dougherty (In re Dougherty), 84 B.R. 653, 657 (9th Cir. BAP 1988), enumerated twelve factors relevant to determining a debtor's intent, none of which is dispositive. As long as, on balance, the evidence supports a finding a fraudulent intent, a determination to that effect is appropriate. See Grogan v. Garner, 498 U.S. 279, 291 (1991).

The twelve so-called Dougherty factors are as follows:

7

      1) the length of time between the charges and the bankruptcy filing;

      2) whether or not an attorney had been consulted concerning the filing of bankruptcy before the charges were made;

      3) the number of charges made;

      4) the amount of the charges;

      5) the financial condition of the debtor at the time the charges were made;

      6) whether the charges were above the credit limit of the account;

      7) whether the debtor made multiple charges on the same day;

      8) whether or not the debtor was employed;

      9) the debtor's prospects for employment;

      10) the financial sophistication of the debtor;

      11) whether there was a sudden change in the debtor's buying habits;

      12) whether the purchases made were luxuries or necessities.

Dougherty, 84 B.R. at 657.

In its Memorandum Decision at pages 4 through 6, the bankruptcy court applied the facts of Andreyev's case to each of these factors before coming to the conclusion, on the basis of this analysis, that Defendant never intended to repay the charges incurred within the 60-day period prior to her bankruptcy filing, and that her implied promise to pay those obligations was hence false and made with the intent to deceive the First National Bank of Omaha. (Memorandum Decision, 6:20-24). As enumerated above, in making that determination the bankruptcy court pointed to, *inter alia*, Andreyev's doubled use of her credit card in the face

8

of her "bleak" financial picture (with neither Andreyev or her husband employed, and her husband's unemployment benefits expiring as the charges in question were made), the fact that Andreyev went over her credit limit, and the fact that the charges made just before her bankruptcy were more than twice the total of any previously incurred monthly charges.

The bankruptcy court went on to find that the First National Bank of Omaha reasonably relied on Andreyev's implied promise to pay for the charges she incurred, inasmuch as Andreyev had maintained her credit card account in good order until the 60-day period before her bankruptcy filing, the First National Bank of Omaha had no notice of a potential problem with the account before the charges in question were made. *See* Hashemi, 104 F.3d at 1126. (Memorandum Decision, 6:22-28). Finally, the bankruptcy court determined that the First National Bank of Omaha was damaged by Andreyev's non-payment of her obligations in this regard. (Id. at 6:28-7:2). The bankruptcy court hence found that Plaintiff had met its burden of proof in establishing non-dischargeability under 11 U.S.C. § 523(a)(2)(A).

This Court cannot determine, as it must to warrant reversal on appeal, that the bankruptcy court's findings in this regard constituted clear error. The record supports the bankruptcy court's conclusion that credit card debt, owed by Andreyev to the First National Bank of Omaha, was non-dischargeable under 11 U.S.C. 523 (a)(2)(A). *See* Britton, 950 F.2d at 604.

//
//
//

**CONCLUSION**

Based on all the foregoing, the decision of the bankruptcy court is hereby affirmed.[2]

IT IS SO ORDERED.

DATED: December 5, 2005

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[2] Because oral argument would not be of material assistance, this matter was deemed suitable for decision without oral argument.  E.D. Local Rule 78-230(h).

10